**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**
**AT PITTSBURGH**

IN RE: HERITAGE VALLEY HEALTH SYSTEM, INC.

Lead Case No. 2:23-cv-01212-CB

Chief District Judge Cathy Bissoon

STIPULATED ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR STANDARD LITIGATION

## 1. PURPOSE

This Order will govern discovery of electronically stored information ("ESI") (including scanned hard-copy documents) in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

## 2. COOPERATION

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

## 3. RESOURCE PERSON

The parties will identify, to the extent they have not already done so, to each other the resource persons who are and will be knowledgeable about and responsible for discussing their respective ESI. Each ESI resource person will be, or have access to those who are, knowledgeable about the technical aspects of ESI, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the resource persons, as needed, to confer about ESI and to help resolve disputes without court intervention.

The resource person is not necessarily the person who would be designated to testify related to a person or entity's preservation efforts, document retention policies, collection efforts, or other related matters.

**4. PRESERVATION**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI (e.g., email, text ESI, voicemail, spreadsheets, databases, etc.) will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

a) Only ESI accessed, modified, created or received between April 2014 and December 2025 and relating to the above-captioned matter will be preserved;

b) Based upon their investigation to date, the parties will exchange, to the extent they have not already done so, a list of the types of ESI they believe should be preserved and the custodians, or general job titles or descriptions of custodians, for whom they believe ESI should be preserved. The parties shall add or remove custodians as reasonably necessary;

c) The parties will agree, to the extent they have not already done so, upon the number of custodians per party for whom ESI will be preserved;

d) The parties will identify, to the extent they have not already done so, data sources asserted to be not reasonably accessible and therefore agree need not preserve, such as backup media created before July 3, 2021, ESI in foreign jurisdictions, data in slack space, digital voicemail, instant messaging, and automatically saved versions of ESI;

e) The parties will agree, to the extent they have not already done so, upon data sources that will be preserved but not searched, reviewed, or produced, such as backup media of certain systems and systems no longer in use that cannot be accessed;

f) In addition to the agreements above, the parties will agree, to the extent they have not already done so, upon data sources that (a) could contain relevant information but (b) under the proportionality factors, should not be preserved; and

g) In terms of preservation, the parties have not reached any agreements as to the need for forensic examination of any devices that may contain relevant information.

**5. SEARCH AND IDENTIFICATION**

The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer about methods to search ESI in order to identify ESI that is subject to production in discovery and filter out ESI that is likely not subject to discovery. The parties are permitted to use reasonable search methods to narrow down the ESI to be reviewed for production in discovery (e.g., search terms, technology assisted review, deduplication, elimination of correspondence with attorneys, client self-collection efforts, etc.); however, the parties must be prepared to discuss the reasonableness of such efforts. The parties further agree to the following regarding search and identification:

If search terms are requested by the requesting party, the parties shall meet and confer in good faith regarding search terms and queries, file types and date restrictions, data sources and custodians. The parties shall continue to cooperate in revising the appropriateness of the search methodology, such as by the producing party providing hit count reports. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results

and provide a counter proposal as to revised searches or queries. In the event the parties are unable to reach agreement on search terms, including as to the breadth of proportional document review efforts, the parties shall consider in good faith the possibility of a phased approach to document review and production efforts. If a party elects to use technology-assisted review, continuous-active learning, or other advanced technology-based analytics to cull unstructured ESI, the parties shall meet and confer regarding the parameters that will apply. For the avoidance of any doubt, a producing party is at liberty to use any methodology and tool for the purpose of prioritization and/or expediting the review, so long as no documents are culled or removed from attorney review or production based on such methodology. A producing party may always conduct a manual review for responsiveness and privilege, whether or not search terms or technology-aided review is also utilized.

For structured databases, the parties shall meet and confer in an attempt to agree upon an appropriate form of production and potential methods of generating a report in a reasonably usable and exportable electronic file format for review by the requesting party. Upon review of the exported electronic file(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields. A potential approach to discovery involving structured database materials may involve the parties meeting and conferring upon a set of queries to be made for discoverable information within the database.

**6. PRODUCTION FORMATS**

The parties agree to produce ESI in (check all that apply) [ X ] TIFF, [X] native, [X] PDF, and/or [ ] paper or a combination thereof (check all that apply) file formats. If particular ESI warrants a different format, the parties will cooperate to arrange for the mutually acceptable

production of such ESI. The parties agree not to degrade the searchability of ESI as part of the document production process, and have discussed the necessary level of resolution to permit the effective use of produced ESI. Additionally, the parties agree to discuss appropriate load files, if any. The parties further agree to the following regarding production formats:

a) Each document file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces.

b) Entire document families must be produced, even if only the parent or an attachment is responsive. Specifically, the Parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments may be produced, except any document that must be withheld or redacted on the basis of privilege or work-product protection, which will be replaced with a slipsheet or redacted, and entirely withheld documents (as opposed to redacted) placed on a privilege log as required. The parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved, including any attachments to emails subsumed within an email thread.

c) The full text of each electronic document shall be extracted or OCRed ("Extracted Text") and produced in a text file. Document level extracted text or OCR for documents without extracted text will be provided by the producing party for every record, including for scanned hard copy documents as described above. Extracted text will not be provided for ESI that have been redacted because the extracted text would reveal the redacted information. Instead, these files will be OCRed to capture the visible text and those results will be provided in lieu of the original extracted

text. The extracted text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (e.g., the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

d) The parties are not obligated to populate manually any of the metadata fields set forth below if such fields cannot be reasonably extracted from a document with the exception of the following fields: (a) ProdBeg, (b) ProdEnd, (c) ProdBegAttach, (d) ProdEndAttach, and (e) AllCustodian, which should be populated regardless of whether the fields can be populated pursuant to an automated process. The parties reserve the right to request additional metadata fields should the party show good cause for the necessity of such additional metadata.

e) The confidentiality treatment level for any item will be provided with the created data for that item, in the field entitled "Confidentiality Treatment." For items with no confidentiality requirements, the field will be left blank. The producing party will brand any confidentiality endorsement in a corner on any TIFF images representing the produced item. Those endorsements must be in a consistent font type and size and must not obscure any part of the underlying image or Bates Number.

f) Documents with hidden content, such as spreadsheets or presentations, shall be produced in native or TIFF with all content unhidden and notes displayed. If a document must be produced in TIFF, it shall be processed with all content unhidden and any notes displayed on the TIFF image. The parties reserve all rights to meet

and confer to request production of documents with hidden content in an alternate format.

g) If a document is more than one page, the parties shall make reasonable efforts, consistent with reasonable industry practices, to provide the logical unitization of the document, any attachments, and/or affixed notes as they exist in the original document.

h) The Parties agree to produce documents using the Eastern Standard Time Zone.

i) A producing party is not obligated to extract or produce entirely duplicate ESI. Removal of duplicate documents shall only be done on either (1) exact duplicate documents based on MD5 hash values across custodians, or (2) emails that contain the same content, sender and recipients as other messages despite not having matching MD5 hash values such that they would be identified as "email duplicate spare messages" by the Relativity document review platform or an equivalent designation in an alternative document review platform. However, family relationships will be maintained and only exact email family groups, including email duplicate spare messages or equivalents, will be de-duplicated. No email attachment will be de-duplicated against a loose file. Global de-duplication across the entire collection will be employed. This eliminates duplicates to retain only one copy of each document per case. For example, if an identical document resides with three custodians, only the first custodian's copy will be included in the review set. The custodian field will list each custodian, separated by a semicolon, who was a source of that document, or alternatively the Producing Party may utilize a

separate "All Custodians" field which identifies all custodians of the subject document.

j) The parties agree that the fields of metadata in Exhibit A shall be preserved, collected, and produced, only to the extent it is reasonably accessible and non-privileged. This list of metadata is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

k) Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, and audio or video, will be produced in native format, or near-native format. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents.

l) The original native files, or near-native files as appropriate, should be produced in addition to a single-page PDF (or TIFF) placeholder for each document. The placeholder should be endorsed with "Native Format Document," or equivalent, and endorsed with the Bates number assigned to that document. The produced native file should be named with the Bates number assigned to that document. Any confidentiality or other designations stamped on the placeholder for such a document shall apply to the entire native file and its contents. For documents whose native format is MS Power Point, the original native files shall be produced with any comments and color preserved. The produced native file should be named with the beginning Bates Numbers assigned to that document. The parties will meet and

confer upon the other types of files that are not easily converted to image format and will therefore be produced in native format.

m) The relative path to the native file should be included in the delimited text file and the produced files should be organized in a "NATIVES" folder in the production media.

n) All documents, native ESI, photographs, and video shall be produced in color if stored in color. Documents produced in color shall be produced as JPEG images, 300 dpi or higher and 24-bit color depth. Except as already specified herein, the parties agree to make a good faith effort to comply with reasonable and specific requests for the production of higher resolution or color images. Nothing in this order shall preclude a producing party from objecting to such requests as unreasonable in number, timing or scope, provided that a producing party shall not object if the document as originally produced is illegible or difficult to read. The producing party shall have the option of responding by producing a native-file version of the document. If a dispute arises with regard to requests for higher resolution or color images, the parties will meet and confer in good faith to try to resolve it.

o) The parties may utilize email threading technology in their review to thread email messages where the content of those messages, and any attachments, are wholly contained within a later email message in the thread.

p) The parties agree that documents existing in hard copy form should be produced as PDF (or, if PDF is unavailable, in single-page Group IV, 300-dpi TIFF) format and accompanied by an Opticon and IPRO load file (or other generally acceptable load

file format). Each PDF file will be given a unique file name that matches the Bates number label on the corresponding page. The accompanying load file shall contain, at a minimum, (a) ProdBeg, (b) ProdEnd, (c) AttachProdBeg, (d) AttachProdEnd and (e) custodian name, to the extent available. The full extracted or OCR text should be included and produced at a document level and located in the same folder as their respective document image or OCR/TEXT folder.

q) The parties agree that documents existing in hard copy form may be produced in searchable PDF if the parameters in paragraph (p) are unduly burdensome and not proportionate to the needs of the case. The producing party must meet and confer with the requesting party before producing in searchable PDF and present its position. Each PDF file will be given a unique file name that matches the Bates number label on the first page of the document.

r) The parties will undertake best efforts to unitize documents correctly. In scanning hard-copy documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).

s) Text of hard-copy documents shall be extracted using industry-standard OCR technology. Text files shall not contain the redacted portions of the documents.

t) Responsive hard copy documents shall not be eliminated as duplicates of responsive ESI.

**7. PHASING**

When the parties require some discovery prior to ADR/mediation, the parties agree to phase the production of ESI. The parties shall agree, to the extent they have not already done so, upon an initial production from specific sources and custodians.

This agreement will not limit the parties' discovery if ADR/mediation is unsuccessful. However, the parties will continue to explore appropriate and proportional phasing of discovery throughout the discovery process.

When a party propounds discovery requests pursuant to Fed. R. Civ. P. 34, the parties agree to phase the production of ESI and shall agree, to the extent they have not already done so, upon an initial production from specific sources and custodians.

Following the initial production, the parties will continue to prioritize the order of subsequent productions.

**8. ESI PROTECTED FROM DISCOVERY OR PUBLIC DISCLOSURE**

a) Pursuant to Fed. R. Evid. 502(b) and (d), the production of ESI which is privileged or is protected trial preparation material is not a waiver of privilege or protection from discovery in this case or in any other federal, state, arbitration or other proceeding. This Section shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d) with regard to privileged documents. The parties agree that, unless expressly provided for herein, Fed. R. Evid. 502(b) shall not apply to any disputes regarding privileged documents that are produced in this litigation. The parties further agree to the following:

i. A producing party must promptly notify the party receiving the protected information, in writing that it has disclosed the Protected Information

without intending a waiver by the disclosure. The notification by the producing party shall include as specific an explanation as possible why the protected information is covered by the attorney-client privilege, the work-product doctrine and/or constitutes trial preparation material. Upon such notification, the receiving party must unless it contests the claim of attorney-client privilege, work product doctrine, or protection as trial preparation material in accordance with subparagraph (ii) promptly (a) notify the producing party that it will make best efforts to identify and return, sequester or destroy (or in the case of electronically stored information, delete) the protected Information and any reasonably accessible copies it has and (b) provide a certification that it will cease further review, dissemination and use of the protected information. For purposes of this Order, protected information that has been stored on a source of electronically stored information that is not reasonably accessible, such as backup storage media, is sequestered. If such data is retrieved, the receiving party must promptly take steps to delete or sequester the restored protected Information.

ii. If the receiving party contests the claim of attorney-client privilege or protection as trial preparation material, the receiving party must within 30 days of receipt of the notification referenced in subparagraph (i) move the Court for an order finding that the material referenced in the notification does not constitute protected information. This motion must be filed (with Court approval) under seal and cannot assert the fact or circumstance of the

disclosure as a ground for determining that the material does not constitute protected information. Pending resolution of the motion, the receiving party must not use the challenged information in any way or disclose it to any person other than as required by law to be served with a copy of the sealed motion.

iii. The parties may stipulate to extend the time periods set forth in subparagraphs (i) and (ii).

iv. The disclosing party retains the burden upon challenge pursuant to subparagraph (ii) of establishing the privileged or protected nature of the Protected Information.

v. Nothing in this Order limits the right of any party to petition the Court for an in camera review of the protected information.

vi. This Order does not preclude a party from voluntarily, expressly and intentionally waiving the attorney-client privilege or trial preparation material protection. Any such waiver must be unequivocal, specific, and made in writing, and shall identify the particular document(s) or information as to which the privilege or protection is waived. The provisions of Federal Rule of Evidence 502(a) apply when the disclosing party affirmatively and intentionally uses information produced under this Order to support a claim or defense, and shall not apply to any inadvertent production, clawed-back material, or disclosure protected by this Order or by Rule 502(d).

b) The parties may agree upon a "quick peek" process, without waiver of privilege or protection as trial preparation material, pursuant to Fed. R. Civ. P. 26(b)(5).

c) Communications involving trial counsel that post-date the filing of the complaint need not be placed on a privilege log.

d) Communications may be identified on a privilege log by category, rather than individually, if agreed upon by the parties or ordered by the Court. The parties further agree that, for documents and ESI that have been withheld as privileged, the withholding party shall provide the following objective metadata to the extent it is reasonably available: date, author(s), custodian(s), recipient(s), file type, and subject (to the extent the subject does not reveal protected content). In addition, the withholding party shall also provide for each document on their privilege log an identifier for the privilege being asserted (e.g., “ACP” for attorney client privilege, “WP” for work product, or other descriptions as necessary based on the specific privilege being claimed), the document’s Bates Numbers or other unique identifier, and a description of the nature of the privileged or protected material in such a way that will enable other parties to assess the claim.

e) The parties have not agreed to use the Form Inadvertent Production Provision of LCvR 16.1.D (The Clawback Agreement), and its terms are not incorporated herein. The parties have instead agreed upon the clawback procedure set forth in Section 8(a) of this Stipulated Order.

f) The parties have not agreed to use the Form Protective Order (App. LPR 2.2) for protection of Confidential Information, such as trade secrets, and its terms are not incorporated herein. The parties have instead agreed upon and submitted for the

Court's approval a Stipulated Protective Order filed concurrently with this Stipulated Order. *

**9. MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. The parties further agree that, should any party subsequently determine in good faith that it cannot proceed as required by this Order or that the Order requires modification, the parties will meet and confer to resolve any dispute before seeking Court intervention.

*[Counsel and judicial signatures to follow.]*

*Any requests for judicial intervention under this Order also are governed by § III.B.3 of Judge Bissoon's Ps & Ps, requiring telephonic conference before proceeding to motions practice.

Any requests for sealing contemplated in this Order also shall comply with this Court's ECF Ps & Ps regarding the same.

IT IS SO STIPULATED, through Counsel of Record on this 5th day of November, 2026.

By: */s/ Gary F. Lynch*
Gary F. Lynch (PA 56887)
**LYNCH CARPENTER, LLP**
1133 Penn Avenue - 5th Floor
Pittsburgh, PA 15222
[t] 412-322-9243
gary@lcllp.com

Raina C. Borrelli (*pro hac vice*)
**STRAUSS BORRELLI PLLC**
980 N Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
raina@straussborrelli.com

*Counsel for Plaintiffs and the Putative Class*

By: */s/ Edward J. McAndrew*
Edward J. McAndrew
**BAKER & HOSTETLER LLP**
1735 Market Street - Suite 3300
Philadelphia, PA 19103
[t] 202-664-2939
emcandrew@bakerlaw.com

*Counsel for Defendant*
*Heritage Valley Health System, Inc.*

## ORDER

**PURSUANT TO STIPULATION, IT IS SO ORDERED** that the foregoing Agreement is approved.

Date: November 10, 2026

s/Cathy Bissoon
Honorable Chief District Judge Cathy Bissoon

**EXHIBIT A**

| FIELD NAME | FIELD DESCRIPTION |
|---|---|
| DOCID/IMAGEFILENAME | Unique identifier |
| PRODBEG | First Page document number |
| PRODEND | Last Page document number |
| PRODBEGATT | First Page of Family group range number |
| PRODENDATT | Last Page of Family group range number |
| CUSTODIAN | All record owners of the file from whom the data was collected |
| ALLCUSTODIAN | All custodians who were in possession of a de-duplicated document besides the individual identified in the Custodian field |
| HASH VALUE | A unique, identifying number of a file calculated by a hash algorithm, e.g. MD5. |
| FROM | Email Sender |
| TO | Email Recipient(s) |
| CC | Email Recipient(s) that were Copied |
| BCC | Email Recipient(s) that were Blind Copied |
| SUBJECT | Subject line of emails |
| THREADID | Identification of email threads |
| PARENTID | Identification of email parent relationships |
| FILENAME | Name of file |
| DATESENT | Email sent date |
| TIMESENT | Email sent time |
| DATERECEIVED | Email received date |

| | |
|---|---|
| TIMERECEIVED | Email received time |
| DATESAVED | Save date |
| TIMESAVED | Save time |
| DATELASTPRINT | Date last printed |
| TIMELASTPRINT | Time last printed |
| FILEEXT | File extension of document |
| AUTHOR | Author information as derived from the properties of the document |
| | |
| TITLE | Title from document metadata (if applicable) |
| DATECREATED | Date document was created on non-emails |
| TIMECREATED | Time document was created on non-emails |
| DATEMODIFIED | Last date document was modified on non-emails |
| TIMEMODIFIED | Last time document was modified on non-emails |
| FILESIZE | Size of Native file |
| PGCOUNT | Number of pages in document |
| OCRPATH | Path to extracted text of native file or OCR |
| NATIVELINK | Path to email or native file document (if applicable) |
| ORIGINALPATHFOLDER or FILEPATH | Path including filename |
| REDACTED | Whether the document contains redactions |